### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

LEFF,

                Plaintiff

        v.

GULFSTREAM ANESTHESIA
CONSULTANTS, P.A.,

                Defendant

CIVIL ACTION NO.4:13-CV-02825


(MEHALCHICK, M.J.)

## MEMORANDUM

### PROCEDURAL HISTORY AND BACKGROUND

By way of relevant procedural background, the instant action was removed to federal court on November 19, 2013, pursuant to 28 U.S.C. §§ 1441(a) and (b), and 28 U.S.C. §1332 (Doc. 1), and referred to this Court on February 4, 2014 in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P.73. (Doc. 10). This case arises from a simple contractual dispute between Plaintiff Dr. David Leff and Defendant Gulfstream Anesthesia Consultants, P.A.

Proposed findings of fact and conclusions of law were respectively filed by the parties on October 2, 2014. After reviewing the parties' submissions, the Court distilled three main issues with respect to the Independent Contractor's Agreement requiring resolution, namely: (1) whether the proper term of the Agreement was forty (40) weeks or one year; (2) whether the agreement was properly terminated with cause or without cause; and (3) whether the "proration clause" has an effect on a calculation of damages, if any.

A non-jury trial was held on October 6, 2014 at 9:30 a.m. Plaintiff was represented by counsel, Michael M. Apfelbaum; Defendant was represented by counsel, Gerald E. Burns. At

trial, the Court heard testimony from Dr. Leff and, on behalf of the Defendant, Dr. Lawrence Reid, President for Gulfstream Anesthesia Consultants, P.A.

The Court, having heard the testimony and reviewed all documentary evidence now enters the following Findings of Fact, Conclusions of Law and Decision pursuant to Rule 52 of the Federal Rules of Civil Procedure. Fed.R.Civ.P.52.

### FINDINGS OF FACT

The following findings of fact are based upon the stipulation of the parties, as well as the testimony and evidence which the Court found credible as presented at trial.

1. Defendant Gulfstream Anesthesia Consultants, P.A. ("Gulfstream"), is a professional association whose sole member is Dr. Lawrence Reid, a resident of the State of Florida. Plaintiff, Dr. David Leff ("Dr. Leff"), is a resident of the Commonwealth of Pennsylvania.

2. Gulfstream hires board certified anesthesiologists as independent contractors to provide anesthesiology services to five hospitals in the Northumberland, Bradford, Clinton, and Columbia counties. (Trial Tr. 55).

3. Dr. Leff, a board certified anesthesiologist, and Gulfstream entered into an Independent Contractor Agreement dated January 16, 2012, whereby Dr. Leff would provide anesthesia coverage for Gulfstream on a permanent, part-time basis for at least forty (40) weeks per year. The Agreement would be effective for one year, beginning January 16, 2012 through January 15, 2013 unless otherwise terminated in accordance with the terms of the Agreement.

4. Gulfstream generated its work schedule mid-month for the next month. (Trial Tr. 60). While the Agreement stipulated that Gulfstream desired to contract with Dr. Leff for at

least 40 weeks per year, the Agreement did not obligate Gulfstream to schedule Dr. Leff for any consecutive period of time. The understanding between the parties was that Dr. Leff would provide part-time coverage for forty (40) weeks, and Gulfstream would contract with other anesthesiologists to provide coverage for the remaining weeks in order to ensure that there would be an anesthesiologist on call throughout the year if needed. (Trial Tr. 62).

5. Dr. Leff was to be paid only for the time that he worked. (Agreement, Ex.1 at 13). The Agreement provided that Dr. Leff would be compensated in the amount of $11,400 "per full week worked." A full work week, pursuant to the Agreement, required that Dr. Leff be on call twenty-four (24) hours a day, seven (7) days per week. (Agreement, Ex.1 at 13). Partial weeks would be calculated in conformance with a compensation schedule provided in Section 5.1 of the Agreement. (Agreement, Ex.1 at 13).

6. In accordance with Section 5.2 of the Agreement, if the Agreement terminated for "any reason including death, disability and termination for 'good and sufficient cause," Dr. Leff would be entitled to prorated compensation "as of the date of the termination of employment." (Agreement, Ex.1 at 13).

7. The Agreement authorizes both termination with cause[1] and termination without cause by giving proper written notice to the party. (Agreement, Ex.1 at 12).

--------

[1] Section 4.3 of the Agreement provides for termination for good and sufficient cause. Good and sufficient cause includes failure of Dr. Leff to maintain for any reason, in full force and effect, a policy of professional liability insurance pursuant to Section 6 of the Agreement. Specifically, under Section 6 of the Agreement, Dr. Leff is required to "purchase, maintain, and
*(footnote continued on next page)*

8.   Pursuant to Section 4.2 of the Agreement, Gulfstream could voluntarily elect to terminate the Agreement without cause, upon sixty days (60) written notice of termination. (Agreement, Ex.1 at 12). Pursuant to Section 12 of the Agreement, notice would be sufficient if in writing and either personally delivered or sent by certified mail, return receipt requested. (Agreement, Ex.1 at 19).

9.   By August of 2012, the relationship of the parties had begun to deteriorate. As a result, in a letter dated August 29, 2012, Gulfstream provided written notice of termination of the Agreement *without* cause. The letter provided, in relevant part:

> As president of Gulfstream Anesthesia Consultants (the "Contractor"), I write with regard to the Independent Contractor Agreement (the "Agreement") by and between the Contractor and you effective January 16, 2012. [ ]Contractor reserves all rights under the terms of the Agreement . . . . [P]lease accept this letter as written notice of termination of the Agreement without cause effective in 60 days . . . .

(Aug. 29 Letter, Ex. 2).

10. The August 29, 2012 notice of termination was sent by certified mail, return receipt requested. The notice was postmarked September 10, 2012 and Dr. Leff claims he received the notice on September 13, 2012. [2] (Aug. 29 Letter, Ex. 2). The effective date

---

pay all premiums for professional liability insurance insuring [his] professional malpractice with minimum overall amounts of Five Hundred Thousand and No/100s Dollars ($500,000.00) per occurrence and One Million Five Hundred Thousand and No/100s Dollars ($1,500,000.00) in the aggregate or such greater coverage amounts as required" from time to time. Such insurance is required to be maintained by Physicians Casualty Insurance. (Agreement, Ex.1 at 12-14).

[2] Aside from his testimony, Dr. Leff failed to submit a legible return receipt confirming that he signed for the notice on September 13, 2012. Gulfstream does not contest the actual date Dr. Leff signed for the notice, but rather argues that the mailbox-rule is triggered here, and thus notice should be effective as of September10, 2012. (Aug. 29 Letter, Ex. 2). This is a negligible

*(footnote continued on next page)*

of termination of the Agreement was November 9, 2012, sixty (60) days from when the notice of termination was postmarked on September 10, 2012.

11. The testimony of Gulfstream reveals that in mid-September, Gulfstream generated a working schedule for the month of October. Gulfstream did not schedule Dr. Leff to work for the month of October. (Trial Tr. 87).

12. Furthermore, around this time, Dr. Leff requested that Gulfstream no longer schedule him for work beginning October 10, 2012. As evidence of that request, Gulfstream sent Dr. Leff an email on October 1, 2012 noting Dr. Leff's request to be permanently taken off the schedule effective October 10, 2012. (Oct. 1 Email, Ex. 6).[3]

13. Dr. Leff did not object to Gulfstream's email confirming Dr. Leff's resignation as of October 10th. (Trial Tr. 74). Given the nature of the chain of emails in question, the Court finds that Dr. Leff's failure to object to this confirmation indicates that he intended for the 10th to be his date of resignation.

14. In that same email dated October 1, 2012, Gulfstream informed Dr. Leff that his services would be no longer needed as an independent contractor, and thus directed Dr.

---

three-day difference and as will be described below, makes no difference in terms of the outcome of the analysis.

[3] On October 2, 2012, Gulfstream followed up on its October 1, 2012 e-mail by providing written notice of termination with *cause* in accordance with Section 4.3 of the Agreement, citing a failure to maintain the requisite professional liability insurance with Physician Casualty Insurance. It sent the written notice by certified mail, return receipt requested. The written notice was postmarked October 2, 2012 and received by Dr. Leff on October 9, 2012. (Oct. 2 Letter, Ex. 9). For reasons discussed herein, the Court finds that Dr. Leff was terminated *without cause* and therefore this notice has no bearing on the outcome of this case.

Leff to gather his personal belongings and vacate the premises by the end of the business day. (Oct. 1 Email, Ex. 6).

15. Dr. Leff acted in accordance with the email and did not return to work for the remainder of the sixty (60) day term.

16. Dr. Leff worked a total of thirty-two (32) weeks of the thirty-eight (38) weeks under the contract, from the date the contract was formed on January 6, 2012, to Dr. Leff's last day providing coverage for Gulfstream on October 1, 2012. (1099 Ex. 3). It is undisputed that Dr. Leff has been compensated for thirty (30) of the thirty-two (32) weeks he had been scheduled to work for Gulfstream.

17. Gulfstream withheld two weeks of compensation from Dr. Leff. This amount totals $22,800.00, which reflects the pay period beginning September 16, 2012 to September 30, 2012. Gulfstream testified that it deducted $1,200.00 from that paycheck to account for rent owed to Gulfstream, as it leased a house to Dr. Leff and typically deducted monthly rent checks from his paycheck. (Trial Tr. 70). Gulfstream further testified that pursuant to Section 6.2 of the Agreement, the remainder of the paycheck was used to purchase tail coverage insurance. (Trial Tr. 67).

18. Section 6.2 of the Agreement states, as follows:

Independent Contractor agrees that Company may withhold, in its sole and absolute discretion, the amount of the premiums for such "tail" insurance from fees otherwise due and payable by Company hereunder and pay such amounts directly to the insurance carrier for such additional or extended reporting periods of insurance coverage as Company may deem necessary in the event that . . . Independent contractor fails to obtain such coverage.

6

(Agreement, Ex 1 at 14-15). At trial, Gulfstream did not produce evidence that it had, in fact, purchased tail insurance with the amount withheld from Dr. Leff's paycheck. (Trial Tr. 68).

### CONCLUSIONS OF LAW

1. In construing a contract, the Court must ascertain the intention of the parties by considering the entire contract, read as a whole. *Robt. F. Felte, Inc. v. White*, 301 A.2d 347 (1973); *Sykes v. Nationwide Mut. Ins. Co.*, 198 A.2d 844 (1964); *Breen v. R.I. Ins. Co.*, 42 A.2d 556 (1945).

2. When contracts contain clear and unambiguous terms, the Court need only scrutinize the writing itself to give effect to the parties' understanding. Specifically, "[i]t is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible." *Neal D. Ivey Co. v. Franklin Assocs.*, 87 A.3d 236, 239 (1952). "Specific terms in the body of the contract control." *Id.* (citations omitted).

3. "[C]lauses seemingly in conflict are construed, if possible, as consistent with one another. Terms in one section of the contract should not be interpreted in a manner which nullifies other terms.'" *AK Steel Corp. v. Viacom, Inc.*, 835 A.2d 820, 824 (Pa. Super. 2003) (quoting *Brown v. Cooke*, 707 A.2d 231, 233 (Pa. Super. 1998)(quotations omitted).

4. However, "[i]t is well settled that before a court may interpret a contract in such a way as to reach an absurd result, it must endeavor to reach an interpretation that is reasonable in light of the parties' intentions." *Empire Sanitary Landfill, Inc. v. Riverside*

*Sch. Dist.*, 739 A.2d 651, 655 (Pa. Commw. Ct. 1999)(citing *Pocono Manor Ass'n v. Allen*, 12 A.2d 32 (1940)).

5.  The term of the Independent Contractor Agreement between Dr. Leff and Gulfstream was for one year, and that the parties intended that Dr. Leff would provide part-time anesthesiology coverage for forty (40) weeks of that year, unless otherwise terminated with or without cause.

6.  The agreement was properly terminated *without* cause effective November 9, 2012. As such, Dr. Leff had no expectation of continued employment through January 15, 2013, as the Agreement specifically accounts for termination without cause before the end of the contractual term.

7.  Gulfstream provided proper written notice terminating the Agreement without cause by delivering the notice by certified mail, return receipt requested on September 10, 2012 in accordance with Section 4.2 of the Agreement. The effective date of termination was November 9, 2012, sixty (60) days from the date written notice was postdated on September 10, 2012.

8.  Dr. Leff had no expectation of receiving compensation from October 1, 2012 through his effective termination on November 9, 2012. Under Section 4.1 of the Agreement, Gulfstream was under no obligation to schedule Dr. Leff to take call for any period of time. Thus, Gulfstream's exclusion of Dr. Leff from the schedule for the month of October, especially in light of Dr. Leff's constructive resignation from Gulfstream effective October 10, 2012, was neither done in bad faith nor in contravention of any of the provisions of the Agreement.

9. Moreover, the facts at trial establish that Dr. Leff requested that he no longer be scheduled to provide anesthesiology coverage for Gulfstream effective October 10, 2012, which constitutes the remaining thirty (30) days before the effective date of termination on November 9, 2012. As such, Dr. Leff did not have a reasonable expectation to be paid for the entire sixty (60) days leading up to the effective date of termination and thus, is not entitled to any compensation for the dates spanning October 10, 2012 to November 9, 2012.

10. In considering the proration clause, Dr. Leff does not receive additional compensation, as he already worked all he was entitled to under the prorated provision of the contract. Gulfstream established at trial that the parties intended to prorate any compensation owed by basing the calculation on the amount of time remaining in the forty (40) weeks that Dr. Leff was anticipated to work within that contracted year.

11. Dr. Leff was terminated without cause on November 9, 2012. The expiration of the contract term was January 15, 2013. When Dr. Leff was terminated on November 9, 2012, there were sixty-seven (67) days left on the contract. At that point, Dr. Leff had completed 82% of his contractual term.[4] 82% of the forty (40) weeks he was entitled to work is 32.8 weeks. Thus, Dr. Leff would be entitled to prorated compensation for the

---

[4] There were 366 days included in the term of January 16, 2012 through January 15, 2013. With 67 days remaining, the contracted lasted for 299 days. 299 days of 366 days is 81.69%

stated 32.8 weeks. The facts at trial establish that Dr. Leff had already worked thirty-two (32) weeks by the time he left Gulfstream on October 1, 2012.

12. Dr. Leff did not offer a rebuttal or alternative explanation to Gulfstream's calculation of prorated benefits. Accordingly, Dr. Leff is not entitled to receive any additional compensation under Section 5.2 of the Agreement.

13. Dr. Leff is entitled to $21,600.00 of the $22,800.00 withheld from his paycheck from the pay period beginning September 16, 2012 to September 30, 2012. The $21,600.00 reflects a deduction of $1,200.00 for rent owed to Gulfstream.

An appropriate Order shall follow.

Dated: November 6, 2014

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**